IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-777-FL

| | |
|---|---|
| GOLDMAN SACHS TRUST COMPANY, N.A., as Executor of the Estate of RALPH L. FALLS, JR., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| RALPH L. FALLS, III, | ) ) |
| Defendant. | ) ) |

ORDER

This matter is before the court on plaintiff's motion for summary judgment, made pursuant to Federal Rule of Civil Procedure 56. (DE 35). Defendant timely filed a response, and plaintiff replied. The issues raised have been briefed fully, and in this posture are ripe for ruling. For the reasons that follow, plaintiff's motion is denied.

## STATEMENT OF THE CASE

This case arises out of an alleged loan made by plaintiff Ralph L. Falls, Jr. ("Falls Jr."), now deceased,[1] to his son, defendant Ralph L. Falls, III, for defendant's use in purchasing a house on 69 Edgewood Road, in Summit, New Jersey ("New Jersey house"). On November 7, 2014, Falls Jr. filed a complaint for specific performance, breach of contract, and misrepresentation related to the alleged loan. (DE 1). In particular, plaintiff's complaint seeks specific performance of a second

---

[1] Falls Jr. died on May 11, 2015, some time after initiating this suit. As executor of his estate, Goldman Sachs Trust Company, N.A. ("Goldman Sachs"), was substituted as plaintiff. (DE 27). For purposes of this order, "plaintiff" refers to Goldman Sachs in its capacity as executor of Falls Jr.'s estate.

mortgage on the New Jersey house, accompanied by execution of a promissory note in favor of plaintiff for $290,000.00; award of $290,000.00 in damages for the amount of the alleged loan, plus interest pursuant to sections 24-1 and 24-5 of the North Carolina General Statutes; award of damages for misrepresentations defendant made in acquiring the loan from Falls Jr.; and payment of plaintiff's costs and fees.

On January 23, 2015, defendant filed an answer denying liability and asserting several defenses, including setoff. (DE 9). In addition, defendant asserts counterclaims, for plaintiff's alleged breach of fiduciary duties, and for specific performance of a lease agreement. Defendant's setoff defense and counterclaims relate to a lease agreement between the parties involving a house on 2507 Evans Street, in Morehead City, North Carolina ("North Carolina house"), which is the subject of a separate action now pending in state court, Case No. 15-E-1997,[2] the facts of which are discussed in greater detail below. Defendant's counterclaim in the instant action alleges that plaintiff failed timely to transfer title and make rent payments for the North Carolina house in accordance with the terms of the parties' lease agreement, thereby breaching its fiduciary duty as trustee of a trust containing the North Carolina house.

On February 29, 2016, plaintiff filed the instant motion for summary judgment on its claim for breach of contract, and on defendant's counterclaims. (DE 35). Plaintiff argues that defendant breached the alleged loan agreement by failing either to repay the loan or honor its terms requiring placement of a second mortgage upon the New Jersey house in favor of plaintiff. Plaintiff argues also that it is entitled to summary judgment on defendant's counterclaims, where defendant fails to

---

[2] The case was initially removed to this court but then remanded by this court upon order entered July 15, 2015, and now, it is pending before the Estates Division of the Clerk of Superior Court, Wake County, North Carolina. See In re Falls, No. 5:16-CV-98-FL, 2016 WL 3913598 (E.D.N.C. July 15, 2016).

offer evidence of damages sufficient to support breach of fiduciary duty, and where recent transfer to defendant of title to the North Carolina house renders moot both counterclaims.

In support of its motion, plaintiff submitted a statement of material facts (DE 37), and relies upon the following materials: excerpts from defendant's deposition (DE 36-2, 42-1); emails exchanged between Falls Jr. and defendant (DE 36-3, 3–4); a declaration by Falls Jr.'s executive assistant, Nancy A. Ledford (DE 36-4); a bank settlement statement reflecting purchase of the New Jersey house (DE 36-3, 2); plaintiff's interrogatories and defendant's responses (DE 36-5, 36-7); and plaintiff's requests for documents and defendant's responses. (DE 36-6, 36-8).

On March 24, 2016, defendant filed a memorandum in opposition to plaintiff's motion for summary judgment. (DE 39). He argues that the alleged loan was an irrevocable, inter vivos gift; that his affidavit establishes Falls Jr.'s donative intent; and in the alternative, that there is a genuine issue of material fact concerning Falls Jr.'s intent as it related to the alleged loan. Defendant concedes that his counterclaim for specific performance for transfer of title to the North Carolina house is moot. However, he argues, his setoff defense and counterclaim for breach of fiduciary duty survive summary judgment, where plaintiff was approximately three years tardy in transferring title, where the ongoing suit involving the North Carolina house prevents him from specifying a specific amount of damages for setoff, and where the disputed lease agreement provides sufficient evidence of damages.

In support of his opposition to plaintiff's motion for summary judgment, defendant submitted a statement of material facts (DE 40), and relies upon the following materials: defendant's affidavit (DE 41, 3–5); excerpts from defendant's deposition (id. at 56–87); emails exchanged between Falls Jr. and defendant (id. at 8); documents relating to plaintiff's mortgage loan from Wells Fargo

3

for purchase of the New Jersey house (id. at 9–13); documents relating to lease of, and transfer of title to, the North Carolina house (id. at 39–53); terms of the trust controlling the North Carolina house (id. at 28–38); defendant's interrogatories and plaintiff's responses (id. at 87–96, 105–15); defendant's requests for documents and plaintiff's responses (id. at 97–104, 116–52); and documents relating to defendant's action against plaintiff in state court, including his creditor's claim in Case No. 15-E-1997. (Id. at 14–15).

Plaintiff filed a reply (DE 42), and attached additional excerpts from defendant's deposition (DE 42-1). Plaintiff reiterates its previous arguments, and argues also, that defendant's later affidavit must be disregarded for purposes of summary judgment because it contradicts testimony in his earlier deposition, that if defendant's affidavit properly is excluded then there is no genuine issue of material fact regarding Falls Jr.'s intent, and that defendant either waived or precluded his counterclaim of breach of fiduciary duty by asserting setoff as an affirmative defense instead of a counterclaim.

## STATEMENT OF FACTS

The facts, viewed in the light most favorable to defendant, are as follows:

A.  New Jersey House

On June 2, 2013, defendant entered into a contract to purchase a house in Summit, New Jersey, for $1,350,000.00. In an email dated July 23, 2013 ("July 23 email exchange"), Falls Jr. agreed to transfer $290,000.00 to defendant in order to assist defendant in purchasing the New Jersey house. Falls Jr. wrote, in relevant part, "You need to get your attorney to write me a letter and tell me that he is going to put a second mortgage on the house for $200,000 after the closing. The $90,000 is being sent to you free and clear[.]" (DE 41, 8). Defendant wrote in reply,

4

"Thank you......i appreciate your advice and support." (Id.). Defendant also sought financing through a mortgage loan with Wells Fargo. (Id. at 4 ¶ 5). Wells Fargo informed defendant it would approve his loan application only if Falls Jr. and defendant agreed "to treat the $200,000 as a gift instead of a loan." (Id. at 4 ¶ 6). Defendant states, "Even though my father and I originally agreed in our July 23, 2013 e-mail that the $90,000 would be a gift and the $200,000 would be a loan, my father had agreed approximately one week later to make the entire $290,000 a gift." (Id. at 6 ¶ 15).

Falls Jr. issued two checks to defendant, each dated July 30, 2013; one check was for the sum of $200,000.00 ("July 30 check"), and the second check was for the sum of $90,000.00. According to Falls Jr.'s executive assistant, Nancy Ledford, sometime in July 2013, she wrote "[o]n the memo line of the $200,000 check . . . 'to be secured by second mortgage' at the direction of Mr. Falls [Jr]." (DE 36-4 ¶ 4, 6). Ledford further states, "When we sent the check to [defendant], the memo line was not blacked out." (Id. ¶ 7). In his affidavit, defendant states, "The writing on the memo line of the checks was crossed out so that I could not read it. I do not know who crossed out the writing on the memo line." (DE 41, 4 ¶ 8). Bank records show that defendant deposited the checks on July 31, 2013. (Id. at 125–26).

On July 31 and August 1, 2013, defendant and Falls Jr., respectively, co-signed gift letters for the $200,000.00 and $90,000.00 checks ("gift letters"), which were submitted to Wells Fargo.[3] The gift letter for the $200,000.00 sum reads, in relevant part: "I, Ralph L. Falls Jr. . . . will give (or have given) a gift of $200,000 to Ralph L. Falls III . . . in time to close the mortgage transaction on the purchase of the [New Jersey] property." (Id. at 9). In addition, the letter certifies, "This is a bona-fide gift, and there is no obligation, expressed or implied either in the form of cash or future

---

[3] The gift letters first appeared in this litigation on or about January 29, 2016, "[w]hen Wells Fargo produced the letters in response to a subpoena issued by Plaintiff." (DE 41, 4 ¶ 9).

services to repay this sum at this time." (Id.). Wells Fargo accepted the gift letters and approved defendant's mortgage application, enabling him to close on purchase of the New Jersey house on August 7, 2013.

Some time later in 2013, Falls Jr.'s health deteriorated, and he began a series of hospital visits in order to receive medical treatment. In December 2013, while Falls Jr. was hospitalized, defendant states that he had a telephone conversation with him, during which Falls Jr. "became very confused, upset, and agitated about the funds that he had given me that past July and demanded that I 'make it current.'" (Id. at 5 ¶ 13). Defendant understood the conversation to mean that Falls Jr. "had either changed his mind or forgotten that he had previously agreed to gift me all those funds." (Id.). Defendant states that he "acquiesced in my father's demand," and on December 28, 2013, he wrote a check to Falls Jr. for a sum of $7,000.00 ("December 28 check"). (Id. at 5–6 ¶ 14). The check's memo line reads, "Aug 2013–July 2014" (id. at 127), and defendant explains that "[t]he $7,000 figure represented my estimate of the interest due since August in order to 'make it current' as if the funds had been provided to me as a loan instead of a gift." (Id. at 4 ¶ 14).

Between 2013 and 2014, defendant states that he had several more conversations with Falls Jr. about a promissory note in Falls Jr.'s favor and a second mortgage on the New Jersey house. (Id. at 73:15–74:19). Ultimately, defendant did not place a second mortgage on the house, nor did he execute a promissory note in favor of Falls Jr. for $200,000.00. (Id. at 73:2–5).

B.  North Carolina House

Years prior to the events surrounding purchase of the New Jersey house, on August 30, 2002, Falls Jr. transferred his title to the North Carolina house to a qualified personal residence trust ("QPRT"). The QPRT designated Falls Jr. as trustee, named defendant as successor trustee, and

6

provided that the trustee was to transfer title in the North Carolina house to defendant when the QPRT expired. The QPRT's expiration was set for the earlier of two dates: the date ten years after its creation, i.e., August 30, 2012; or the date of Falls Jr.'s death.

On December 5, 2005, Falls Jr. and defendant executed a lease on the North Carolina house ("lease"), whereby Falls Jr. agreed to rent the house from defendant after its title transferred to defendant. Among other provisions, the lease provided for an initial rental term of one year, followed by automatic renewal for fifteen additional one-year terms, unless Falls Jr. took certain actions to terminate the lease.

Falls Jr. retained title to the North Carolina house until his death on May 11, 2015, despite the QPRT's expiration terms. On June 26, 2015, as successor trustee of the QPRT, defendant transferred title of the North Carolina house to himself in fee simple. On September 10, 2015, he filed a creditor's claim against Falls Jr.'s estate, seeking $255,000.00 for rent and other amounts due under the lease, subject of Case No. 15-E-1997. (Id. at 14–15 ¶ 2). Shortly thereafter, on September 16, 2015, defendant submitted his responses to plaintiff's discovery requests in the instant case, citing his creditor's claim for rent as evidence of damages supporting his defenses and counterclaims. (DE 36-7 ¶ 6).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

7

56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); see United States v. Monsanto Co. , 858 F.2d 160, 171 (4th Cir. 1988). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489

8

(4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

    1.  Plaintiff's Claim for Breach of Contract

Plaintiff argues that it is entitled to summary judgment on its claim for breach of contract,[4] where there is no genuine issue of fact regarding Falls Jr.'s intention to loan the $200,000.00 sum to defendant in exchange for a second mortgage on the New Jersey house, and where it is undisputed that defendant failed to execute a second mortgage on the New Jersey house in plaintiff's favor. Defendant responds that evidence shows Falls Jr. intended for the $200,000.00 sum to be an inter vivos gift.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). To constitute a valid contract, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce v. McMahan, 285 N.C. 730, 734 (1974); see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense.").

"Interpreting a contract requires the court to examine the language of the contract itself for

---

[4] Plaintiff does not move for summary judgment on its claims for misrepresentation and specific performance. Plaintiff describes its claim for misrepresentation as an alternative to its claim for breach of contract, and concedes that it cannot succeed on both claims. (See DE 36, 8–9). Similarly, if judgment is entered in its favor, plaintiff "elects a judgment for money damages over its claim for specific performance." (Id.).

9

indications of the parties' intent at the moment of execution." State v. Phillip Morris USA Inc., 323 N.C. 623, 631 (2009) (internal citation and quotation omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693–94 (1949).

"Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976). If language in a contractual provision in dispute is ambiguous, by contrast, "parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of making the contract or executing the instrument, and to determine the object for or on which it was designed to operate." Root v. Allstate Ins. Co., 272 N.C. 580, 587 (1968).

As a general rule, "[t]he fact that a dispute has arisen as to the parties' interpretation of [a] contract is some indication that the language of the contract is, at best, ambiguous." St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc., 322 N.C. 77, 83 (1988). However "[n]o ambiguity . . . exists unless, in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend." Penn. Nat'l Mut. Ins. Co. v. Strickland, 178 N.C. App. 547, 550 (2006); accord Wachovia Bank Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354 (1970).

"The essential elements of a gift inter vivos are 1) donative intent and 2) delivery, actual or constructive." Holloway v. Wachovia Bank & Trust Co., N.A., 333 N.C. 94, 100 (1992). Furthermore, donative intent and delivery must be present simultaneously. See Buffaloe v. Barnes,

10

226 N.C. 313, 317 (1946). For example, with regard to instruments such as checks, "[t]he gift of a donor's check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee." Creekmore v. Creekmore, 126 N.C. App. 252, 257 (1997).

To determine whether requisite intent exists to make an inter vivos gift "requires consideration of all the facts attendant upon the creation of the purported interest." Buffaloe, 226 N.C. at 320. "[W]here evidence is introduced that calls into question the intention of the grantor, an issue of fact exists for resolution by the jury." Fortner v. Hornbuckle, 235 N.C. App. 247, 253 (2014). "The evidence most relevant to determining donative intent or the lack of donative intent is the donor's own testimony. Other evidence relevant to donative intent includes the testimony of the alleged donee, [and] documents surrounding the transaction." Burnett v. Burnett, 122 N.C. App. 712, 715 (1996) (collecting cases). Relevant documents include "[t]ransfer documents stating that the property is a gift or characterizing the consideration as love and affection," and such transfer documents provide "strong evidence of donative intent." Id. Finally, donative intent "may be inferred from the relation of the parties." McLean v. McLean, 323 N.C. 543, 550 (1988).

Here, several documents are relevant to determining whether Falls Jr. intended to agree that he and defendant treat the $200,000.00 transfer as a loan contract, as plaintiff claims, or as a gift, as defendant asserts. Without yet reaching the facts alleged in defendant's affidavit, the court considers the July 23 email exchange, the July 30 check, the gift letters, and the December 28 check, as relevant documents bearing on the parties' intent. There is no record of oral testimony from Falls Jr. regarding his intent, but the documents containing Falls Jr.'s written statements present conflicting evidence of his intent for treatment of the $200,000.00 sum. See Burnett, 122 N.C. App. at 715.

11

As an initial matter, viewed in the light most favorable to defendant, the July 23 email exchange does not unambiguously convey a meeting of the minds as to whether the parties agreed to have Falls Jr. transfer the $200,000.00 sum as a loan, particularly a loan secured by a second mortgage on the New Jersey house. In his email to defendant, Falls Jr. states, "You need to get your attorney to write me a letter and tell me that he is going to put a second mortgage on the house for $200,000 after the closing." (DE 41, 8). This suggests that the parties' agreement on terms of the proposed transfer was contingent upon securing the second mortgage, which was not completed.

The parties' gift letter executed on July 31 and August 1, considered in conjunction with the July 23 email exchange, adds considerable ambiguity to the nature of their agreement. (See id. at 9) ("I, Ralph L. Falls Jr. . . . will give (or have given) a gift of $200,000 to Ralph L. Falls III.").

Other documents surrounding the alleged contract also raise genuine issues of fact regarding treatment of the $200,000.00 sum as a loan. See Burnett, 122 N.C. App. at 715 ("[E]vidence relevant to donative intent includes . . . documents surrounding the transaction."). For example, the memo line of the July 30 check is obscured and unreadable, and neither defendant nor Falls Jr.'s executive secretary is able to explain when or by whom the memo line was blackened. Further documents containing evidence of the donee's understanding of the agreement may contradict each other: the gift letter demonstrates defendant's understanding that he has no obligation to repay the $200,000.00 sum, while his later December 28 check may suggest his agreement to pay interest on the sum.

Plaintiff argues that the gift letters should not be considered as affecting treatment of the $200,000.00 sum because defendant accepted delivery of the $200,000.00 check by cashing it on July 30, before the parties executed the gift letters on July 31 and August 1. Plaintiff relies on the

12

July 23 email exchange as evidence that, on July 30, Falls Jr. still intended for the $200,000.00 check to be treated as a loan. However, examination of the check reveals that its terms in relation to the alleged loan are ambiguous, where the check's memo line contains multiple terms, but the text has been blackened and is obscured. (See DE 41, 126); see also Bowman, 229 N.C. at 693–94. According to evidence submitted by plaintiff, the memo line stated, "to be secured by second mortgage." (DE 36-4 ¶ 6). The parties' dispute over Falls Jr.'s intent for the $200,000.00 check is additional evidence that the terms of the parties' agreement with respect to transfer of the $200,000.00 sum is ambiguous. See St. Paul Fire & Marine Ins. Co., 322 N.C. at 83. Modification to the memo line some time after the check was written renders the interpretation of the terms of the agreement "fairly and reasonably susceptible to either of the constructions for which the parties contend." See Strickland, 178 N.C. App. at 550. For example, blackening of the memo line supports defendant's proposed construction that Falls Jr. intended for the $200,000.00 sum to be a gift, without consideration. Where the terms of the alleged agreement for transfer of the $200,000.00 sum are ambiguous, relevant extrinsic evidence, such as the gift letters, may be considered "to show what was in the minds of the parties at the time of . . . executing the instrument." See Root, 272 N.C. at 587; Burnett, 122 N.C. App. at 715. Therefore, plaintiff's argument that the court cannot consider the gift letter fails.

Although plaintiff does not specify dates for the creation and breach of the alleged loan contract,[5] it implies that the loan contract may have been complete upon cashing of the check on July 30, 2013. Plaintiff cites Creekmore for the proposition that delivery of a check is completed

---

[5] Instead, plaintiff suggests that "the Court determines the date of breach" when neither party submits certain dates. (DE 36, 10 n.9) (citing Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 525 (E.D.N.C. 2012)).

when it is cashed, 126 N.C. App. at 257, and argues that there is no evidence supporting Falls Jr.'s donative intent at the time defendant cashed the $200,000.00 check on July 30. However, "[u]ntil the check is paid, the donor retains dominion and control over the funds." Id. (quotations omitted). Therefore, while Falls Jr. retained control of the check's funds, he retained control of the terms of the transfer, and for the reasons discussed above, his intent for treatment of the $200,000.00 check is unclear because of ambiguities in the July 23 email exchange and the check. Accordingly, plaintiff's does not satisfy its burden to show that no genuine issue exists with respect to the existence and terms of the alleged agreement for transfer of the $200,00.00 sum.

Viewed in a light most favorable to defendant, and drawing all justifiable inferences from the relevant documents in defendant's favor, see Anderson, 477 U.S. at 249, the documents show that a genuine issue of material fact exists as to whether Falls Jr. and defendant "assented to the same thing in the same sense" with regard to their treatment of the $200,000.00 sum. See Boyce, 285 N.C. at 734. Accordingly, plaintiff fails to meet its burden to show that no genuine dispute exists regarding the alleged loan contract, and therefore its claim for breach of contract may not be resolved by summary judgment. See Crosby, 635 F.3d at 645; Celotex Corp., 477 U.S. at 323.

Although not necessary to the court's decision on the instant motion, the court notes that defendant's affidavit injects further substantial genuine issues of material fact.[6] In the affidavit, defendant explains that Falls Jr. and defendant "ultimately agreed to treat the $200,000 as a gift so

---

[6] The court rejects plaintiff's argument that the affidavit is not admissible for consideration on summary judgment. The affidavit does not "flatly contradict" defendant's deposition testimony, especially in light of defendant's explanations and clarifications. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 n.7 (4th Cir. 2001); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999). Plaintiff argues also that certain statements by defendant's counsel at the deposition represent a judicial admission of the alleged loan, but this argument fails, where counsel's statements represent an evidentiary admission, subject to explanation. See New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963); Managed Care Prof'ls, Inc. v. Medlantic Healthcare Grp., No. 97-2158, 1998 WL 704458, at *4 n.2 (4th Cir. 1998).

14

that [defendant] could be approved for the mortgage [on the New Jersey house]" (DE 41, 4 ¶ 7), and that by December 2013, Falls Jr. "had either changed his mind or forgotten that he had previously agreed to gift [defendant] all of those funds." (Id. at 5 ¶ 13). Drawing justifiable inferences in favor of defendant, see Diebold, Inc., 369 U.S. at 655, the affidavit suggests that Falls Jr. and defendant intended for the gift letters to embody their final written agreement. Transfer documents such as gift letters are "strong evidence of donative intent." Burnett, 122 N.C. App. at 715. Moreover, defendant argues that such an inference triggers application of the parol evidence rule, which would bar other, inconsistent evidence of the parties' communications preceding execution of the gift letters. See Neal v. Marrone, 239 N.C. 73, 77–78 (1953). However, the court's analysis is limited to plaintiff's request for summary judgment on its breach of contract claim, and it need not resolve at this juncture all legal issues associated with defendant's theory that the $200,000.00 sum represents an inter vivos gift.

Taken together, and viewed in a light most favorable to defendant, the evidence surrounding the $200,000.00 transfer raises a genuine issue of material fact regarding whether the parties agreed to treat the $200,000.00 sum as a loan. See Burnett, 122 N.C. App. at 715; Boyce, 285 N.C. at 734. Therefore, plaintiff fails to carry its burden of proof on summary judgment regarding existence of the alleged loan contract and defendant's breach of the contract's terms. See Crosby, 635 F.3d at 645. Accordingly, plaintiff's motion for summary judgment on its claim for breach of contract must be denied.

    2.    Defendant's Setoff Defense and Counterclaim

Plaintiff seeks summary judgment against defendant's defense and counterclaim that he is entitled to set off any damages by the amount of back rent owed for breach of fiduciary duty under

15

the parties' lease for the North Carolina house. In particular, plaintiff argues that defendant's counsel renounced setoff as a counterclaim; and that as a defense, defendant's forecast of damages is insufficient for reasonably certain calculation.[7]

Pursuant to Rule 56, "[a] party may move for summary judgment, identifying each claim or defense," Fed. R. Civ. P. 56(a), including counterclaims and affirmative defenses, such as setoff. See Sinclair Ref. Co. v. Midland Oil Co., 55 F.2d 42, 47 (4th Cir. 1932) (quotations omitted) ("[A]ny set-off or counterclaim against the plaintiff . . . shall have the same effect as a cross-suit, so as to enable the court to pronounce a final decree in the same suit on both the original and the cross-claims."). To establish damages for such a counterclaim or affirmative defense, a party must "show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." Olivetti Corp. v. Ames Bus. Sys., Inc., 319 N.C. 534, 546–48 (1987). References to the source of an alleged setoff, "contained in the pleadings, [and] substantiated by the trial testimony, support a finding that the issue of the [setoff] was adequately presented." See In re Meyertech Corp., 831 F.2d 410, 422 (Bankr. 3rd Cir. 1987). For example, where a party refers to a contract as the source of its setoff, a court may consider provisions of the contract in order to determine whether damages may be calculated with reasonable certainty. See Lord of Shalford v. Shelley's Jewelry, Inc., 127 F. Supp. 2d 779, 789 (W.D.N.C. 2000).

In defendant's answer, he asserts setoff as an affirmative defense and as a basis for his counterclaim for breach of fiduciary duty. (See DE 9, 6, 8–9). Nevertheless, at defendant's

---

[7] Plaintiff also seeks summary judgment on plaintiff's other counterclaim, for specific performance of transfer of title to the North Carolina house. Defendant concedes that transfer of title already has occurred. Accordingly, the court denies as moot plaintiff's motion for summary judgment on defendant's counterclaim for specific performance.

16

deposition, his counsel stated, "I think [the amount of the setoff] would depend on what the amount of the debt is that is established that is owed. . . . There is no counterclaim in this action for rent. It's merely asserted as a defense based on setoff."  (DE 42-1, 13:8–14).  Asked whether he had calculated a precise amount for the setoff, defendant replied that "it exceeds the amount of the loan," and his counsel added, "It will depend on what the amount of the debt is.  That doesn't mean that there isn't additional rent over and above the setoff amount that's owed."  (DE 42-1, 12:17–18, 13:15–24).  In support of his opposition to plaintiff's motion for summary judgment, defendant submitted a copy of the lease for the North Carolina house (DE 41, 39–49), and clarifies that "damages will be the amount of the rent and other amounts due under the Lease for the nearly three-year period . . . when Falls Jr. had a fiduciary duty to convey the property."  (DE 39, 24–25).

Plaintiff argues that defendant forecasts no evidence for reasonably certain calculation of damages.  This arguments fails, where defendant relies upon provisions of the lease specifying that rent shall be set at "fair market value" each year, and that "[i]f the parties cannot mutually agree on a fair market value rental, the rental shall be determined by a qualified appraiser."  (DE 41, 77–78) (describing in greater detail the procedure for selecting a qualified appraiser in case of disagreement); see Lord of Shalford, 127 F. Supp. 2d at 789.  Plaintiff's comparison of this case to the facts of Lord of Shalford as an example of insufficient evidence of damages is inapposite, where the plaintiffs in that case based their claim for damages upon breach of a contract provision that the court found was not contained within the contract.  Id. at 788–89.  Here, by way of contrast, the lease contract contains an undisputed provision bearing directly upon determination of the monthly rent defendant alleges he is due.

17

Plaintiff also argues that defendant asserts setoff in a manner that attempts impermissibly to amend his pleadings out of time. Where defendant specifically asserted setoff as a defense and a counterclaim in his answer, this argument fails. (See DE 9, 6, 8–9); Sinclair Ref. Co., 55 F.2d at 47. Defendant's references to the lease and his creditor's claim in state court for rent due under the lease, as well as his deposition statements substantiating the basis for the setoff, demonstrate adequate and timely presentation of defendant's setoff defense. See Lord of Shalford, 127 F. Supp. 2d at 789; In re Meyertech Corp., 831 F.2d at 410.

In sum, defendant timely presents his setoff defense, and provides evidence sufficient for its reasonably certain calculation. See Lord of Shalford, 127 F. Supp. 2d at 789; Olivetti Corp., 319 N.C. at 546–48. Accordingly, plaintiff fails to meet its burden to show that there is no genuine dispute that defendant's setoff defense is improper. See Anderson, 477 U.S. at 247–48. As a result, plaintiff's motion for summary judgment against defendant's setoff defense must be denied.

However, where defendant's counsel conceded that "[t]here is no counterclaim in this action for rent" (DE 42-1, 13:11–12), where defendant's setoff theory is advanced only as a defense, and where both parties agree that defendant's other counterclaim for breach of fiduciary duty is moot as it pertains to transfer of title to the North Carolina house, the court directs defendant to show cause why his counterclaim should not be dismissed. Furthermore, if defendant seeks to preserve its counterclaim, the court directs him to show cause why it should not be held in abeyance during resolution of his action against plaintiff in Case No. 15-E-1997, at state court, where defendant acknowledges that his setoff theory "cannot be resolved absent interpretation of trust documents at issue in a separate action currently being litigated between these same parties." (DE 39, 3 n.2).

18

## CONCLUSION

Based upon the foregoing, plaintiff's motion for summary judgment (DE 35) is DENIED with respect to its claim for breach of contract, and defendant's setoff defense. Plaintiff's motion for summary judgment is DENIED as moot with respect to defendant's counterclaim for specific performance, where defendant's counterclaim for specific performance is moot. Defendant is DIRECTED, within **14 days** of entry of this order, to show cause why his counterclaim for breach of fiduciary duty should not be held in abeyance or dismissed, or to file a stipulation of dismissal of such claim.

In addition, the parties are DIRECTED to file a joint status report contemplating the scheduling of remaining case activities, also including the utility of any further alternative dispute resolution, within **14 days** of entry of this order. Said report also should include, among other things, the estimated length of trial and three alternative proposed terms for trial.

SO ORDERED, this the 11th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge