IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-777-FL


GOLDMAN SACHS TRUST           )
COMPANY, N.A., as Executor of the    )
Estate of RALPH L. FALLS, JR.,    )
                                              )
                    Plaintiff,              )
                                              )
        v.                                    )                    ORDER
                                              )
RALPH L. FALLS, III,                  )
                                              )
                    Defendant.          )


        This matter is before the court on defendant's motion for judgment notwithstanding the

verdict and for new trial (DE 164). Plaintiff responded and defendant replied. Also before the court

are the parties' post-trial briefs on the issue of setoff and interest, as directed by the court in oral

order entered March 29, 2018. In this posture, the issues raised are ripe for ruling. For the

following reasons, the court denies defendant's motion, denies defendant's request for relief in the

form of a setoff, and directs entry of amended judgment awarding interest as set forth herein.

## BACKGROUND

        Jury trial in this matter commenced March 27, 2018, on plaintiff's claims for breach of

contract and misrepresentation. The jury returned a verdict in favor of plaintiff on plaintiff's breach

of contract claim on March 29, 2018, awarding damages in the amount of $193,000.00. For case

background purposes, the court incorporates herein by reference the statement of the case and

statement of facts from its August 11, 2016, order on plaintiffs motion for summary judgment. (See

Sum. J. Order (DE 43) at 1-7; Goldman Sachs Tr. Co., N.A. v. Falls, No. 5:14-CV-777-FL, 2016

WL 4257345, at *1-4 (E.D.N.C. Aug. 11, 2016)).  The court describes the evidence introduced at trial in more detail in the analysis herein.

The parties filed post-trial briefs on April 6, 2018, on the issue of prejudgment and post-judgment interest, as well as issues associated with defendant's asserted setoff defense. In support of his setoff defense, defendant also filed an affidavit. Defendant filed the instant motion on April 26, 2018, seeking judgment notwithstanding the verdict and a new trial.

## COURT'S DISCUSSION

A.    Standard of Review

1.    Judgment Notwithstanding Verdict

In addressing a motion for judgment notwithstanding the verdict, the court "must determine whether there is no substantial evidence to support the verdict asked of the jury." St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1008 (4th Cir. 1985).  If, "giving [the non-movant] the benefit of every legitimate inference in his favor, there was evidence upon which a jury could reasonably return a verdict for [it]," then judgment notwithstanding the verdict must be denied. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998).  "In making this determination, the court must assume that testimony in favor of the non-moving party is credible, unless totally incredible on its face, and ignore the substantive weight of any evidence supporting the moving party." Id.  The court must "view the evidence in the light most favorable to the nonmoving part[y]" and "give [it] the benefit of all inferences fairly supported by the evidence, even though contrary inferences may be drawn." Murdaugh Volkswagen, Inc. v. First Nat. Bank of S.C., 801 F.2d 719, 725 (4th Cir. 1986).

2. New Trial

A new trial may be granted if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline, 144 F.3d at 301. On a motion for new trial, the court is "permitted to weigh the evidence and consider the credibility of witnesses." Id. "The decision to grant or deny a new trial is within the sound discretion of the district court." Id. "Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial," if the error "do[es] not affect [a] party's substantial rights." Fed. R. Civ. P. 61; see Duty v. E. Coast Tender Serv., Inc., 660 F.2d 933, 942 (4th Cir. 1981).

B. Analysis

1. Motion for Judgment Notwithstanding Verdict

a. Prima Facie Case

Defendant argues that plaintiff failed to present sufficient evidence to establish a prima facie case of breach of contract. Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted).

The jury, in its verdict, answered "YES" to the following question on plaintiff's breach of contract claim:

> Did Ralph L. Falls, Jr. and defendant reach an agreement that Ralph L. Falls, Jr. would loan defendant $200,000.00 upon defendant's promise either to place a second mortgage on the home that defendant purchased in Summit, New Jersey or to provide a promissory note in favor of Ralph L. Falls, Jr.?

3

(Verdict Form (DE 152) at 1). The jury also answered "YES" to the question: "Did defendant breach the agreement?" (Id.).

Substantial evidence supported the jury's findings on these verdict questions. On July 23, 2013, Ralph L. Falls, Jr., sent an email to defendant offering to send defendant $200,000, in exchange for defendant agreeing to "put a second mortgage on the house for $200,000 after the closing" in favor of Ralph L. Falls, Jr. (Trial Tr. Vol I (DE 161) at 40). Defendant responded "Thank you. I appreciate your advice and support." (Id.). Ralph L. Falls, Jr., then sent defendant a $200,000 check, which stated "To be secured by a second mortgage" on the "for" line. (Id. at 42). Defendant endorsed and deposited the check and used the money on the home that defendant purchased in Summit, New Jersey. (Id. at 43).

Confirming the character of the transaction as a loan, defendant testified in his deposition, which was played as a video deposition at trial, as follows:

> Q    Did your father loan you $200,000 to assist you in the purchase and improvement of a home in Summit, New Jersey?
>
> A    Yes.
>
> *       *       *
>
> Q    Did you agree to provide a promissory note?
>
> A    Yes.
>
> Q    Did you agree to place a second mortgage on your home?
>
> A    I believe it was a promissory note/second mortgage, yes. I believe that's correct.

(Def's Dep. at 12, 28; see Trial Tr. Vol. II (DE 162) at 79-81).[1]

---

[1] Throughout this order, page numbers specified in citations of documents filed in the court's electronic case filing (ECF) system are those specified in the ECF document, and not page numbers showing on the face of the underlying document, as is the case with the second volume of the trial transcript cited here.

Viewing this evidence in the light most favorable to plaintiff, there is sufficient evidence supporting the jury's determination on the verdict form that Ralph L. Falls, Jr. and defendant reached an agreement that Ralph L. Falls, Jr. would loan defendant $200,000.00 upon defendant's promise either to place a second mortgage on the home that defendant purchased in Summit, New Jersey or to provide a promissory note in favor of Ralph L. Falls, Jr.

There is also sufficient evidence supporting the jury's determination on the verdict form that defendant breached the agreement by failing to repay the loan and failing either to place a second mortgage on the home or to provide a promissory note in favor of Ralph L. Falls, Jr. Defendant asserted at trial that the $200,000 transferred from his father was "a gift instead of a loan." (Trial Tr. Vol. II (DE 162) at 123). He testified as follows:

> Q.     At any time after you closed on your house did you ask an attorney to prepare a note and mortgage on your house in favor of your father?
>
> A.     We had not prepared a note or a favor [sic] in my father's favor, no.
>
> Q.     Why?
>
> A.     Because it was a gift.

(Id. at 125-26; see also id. at 142). Defendant also testified in his deposition that he did not place a second mortgage on the home or provide a promissory note in favor of his father. (Def's Dep. at 39-40; see Trial Tr. Vol. II (DE 162) at 154). Finally, the parties stipulated that defendant filed "an answer denying that the payment [from his father] was a loan and denying all allegations of liability." (Stipulations (DE 149) at 1). In sum, defendant renounced the loan and he did not place a second mortgage on the home or provide a promissory note in favor of his father.

Defendant argues that plaintiff failed to establish a prima facie case of breach of contract because plaintiff offered no evidence of the terms of the second mortgage or time for repayment of

the loan. The verdict form, however, did not require the jury to make findings of the terms of the second mortgage or time for repayment of the loan. This argument thus is not a basis for judgment notwithstanding the verdict. <u>See</u> <u>St. Paul Fire & Marine Ins. Co.</u>, 779 F.2d at 1008 (4th Cir. 1985) (stating that the court "must determine whether there is no substantial evidence to support the verdict asked of the jury").

In any event, the law does not require plaintiff to present evidence as to terms of the second mortgage or time for repayment of the loan. As noted, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." <u>Crosby v. City of Gastonia</u>, 635 F.3d at 645. Here, the jury was charged to determine whether Ralph L. Falls, Jr. and defendant reached an agreement that Ralph L. Falls, Jr. would loan defendant $200,000 upon defendant's promise either to place a second mortgage on the home that defendant purchased in Summit, New Jersey or to provide a promissory note in favor of Ralph L. Falls, Jr. (<u>See</u> Trial Tr. Vol. III (DE 163) at 118). It was also charged to determine whether defendant breached the agreement by failing to repay the $200,000 loan, and by failing either to place a second mortgage on the New Jersey home or to provide a promissory note in favor of Ralph L. Falls, Jr. (<u>Id.</u> at 121).

"A loan of money has been defined as a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows." <u>Kessing v. Nat'l Mortg. Corp.</u>, 278 N.C. 523, 529 (1971) (quotations omitted). "[A] loan [is] made upon the deliver[y] by one party and the receipt by the other party of a given sum of money, on an agreement, express or implied, to repay the sum lent, with or without interest." <u>Id.</u> (quotations omitted). "These definitions require that there be a delivery of money on the one hand and an understanding to repay on the other for a loan to have been made." <u>Id.</u> In addition, "a reasonable

time for performance is implied in a contract which expresses no time for performance." <u>Lambeth v. City of Thomasville</u>, 179 N.C. 452, 102 S.E. 775, 777 (1920) (quotations omitted).

The alleged agreement in this case did not require specific time for repayment or specific terms for a second mortgage. Indeed it did not require a second mortgage at all but rather a second mortgage or a promissory note. Where defendant plainly testified at his deposition that he did not obtain a second mortgage or a promissory note, and where he denied the existence of a loan at trial, the evidence was sufficient to show that defendant breached the agreement alleged by nonperformance and repudiation. <u>See</u> <u>Pappas v. Crist</u>, 223 N.C. 265, 268 (1943) (holding that "an unequivocal and absolute renunciation of the entire agreement" may be treated "as a present breach and repudiation of the agreement made").

Defendant argues that the concept of breach by repudiation does not apply in this case because the agreement here was akin to an "installment contract which contains no acceleration clause." (Def's Reply (DE 170) at 4 (citing <u>Starling v. Still</u>, 126 N.C. App. 278, 485 S.E.2d 74, 78 (1997))). However, neither plaintiff's contentions at trial nor the evidence viewed in the light most favorable to plaintiff require an interpretation of the loan agreement in this case as an "installment contract." (<u>Id.</u>). Rather, the evidence showed that Ralph Falls, Jr., and defendant reached an agreement that Ralph L. Falls, Jr. would loan defendant $200,000, and that the repayment terms were not expressed in the agreement. Plaintiff did not contend, and the evidence did not require, a finding that defendant would make monthly payments, yearly payments, or any periodic payments of principal and/or interest, at all, or in any given frequency or proportion. Defendant renounced the loan unequivocally, and upon such renouncement the evidence was sufficient for the jury to find in favor of plaintiff on the questions presented by the verdict form.

Defendant suggests that evidence of a $7000 check paid by defendant to his father in December 2013 demonstrates that the agreement was an installment contract. Defendant notes that the payment must have been treated by the jury as a regular payment of principal due on the loan applicable for the time period from August 2013 to July 2014, because the jury found damages in the amount of $193,000. Neither assumption is required by the evidence in the case. The fact that defendant decided to send his father a check for $7000 in December 2013, in reference to repayment of money owed, (see Trial Tr. Vol II (DE 162) at 134-136), does not establish that the loan was an installment contract that required specific payments in set amounts or frequencies. It also does not negate the fact that defendant renounced the loan in its entirety at trial.

In sum, substantial evidence supports the jury's determination of the existence of a valid contract as set forth in question 1 of the verdict form and breach of that contract as set forth in question 2 of the verdict form. Therefore defendant's argument that plaintiff failed to establish a prima facie case of breach of contract is without merit.

        b.     Completed Gift

Defendant argues that the evidence at trial established, as a matter of law, that the $200,000 payment from Ralph Falls, Jr., to defendant was an unconditional, completed gift, and therefore defendant cannot be liable to plaintiff. This argument, however, ignores evidence and inferences construed in the light most favorable to plaintiff. For example, defendant cites his testimony that he and his father agreed that the transfer of funds "would be a gift instead of a loan," after discussing the gift letter requirement imposed by Wells Fargo. (Trial Tr. Vol. II (DE 162) at 123). Other evidence, by contrast, tends to show that defendant and his father agreed that the transfer of funds would be a loan, and their agreement was not altered by the gift letters, including defendant's own

unequivocal deposition testimony.  (See  Def's Dep. at 12, 28; see Trial Tr. Vol II (DE 162) at 79-81).

While the jury was permitted to weigh the testimony in the manner suggested by defendant in his brief, substantial evidence supports a verdict in favor of plaintiff.  Accordingly, defendant's motion for judgment notwithstanding the verdict must be denied.

2.      Motion for New Trial

a.      November 2013 Letter

Defendant argues that a new trial is warranted because plaintiff's Exhibit 16, a November 2013 letter from Ralph Falls, Jr., to defendant, was improperly admitted hearsay evidence.

As an initial matter, introduction of the November 2013 letter was not improper because the court provided a limiting instruction that it "did not allow it in for the truth of the matter asserted that there was a loan, but rather to show there was a demand made by the father to the son in November of 2013." (Trial Tr. Vol. I (DE 161) at 52).  Accordingly, the November 2013 letter was not admitted as hearsay evidence.  See Fed. R. Evid. 801(c)(2);

In any event, even if improper, admission of the November 2013 letter is not a basis for a new trial because it did not result in a miscarriage of justice.  Indeed, statements made in the November 2013 letter provided grounds for the court's determination that the Dead Man's Statute, N.C. R. Evid. 601(c)(3), had been waived in this case, thus opening the door to a substantial amount of testimony supporting central aspects of defendant's case.  (See Order (DE 142) at 2-6 (waiver and scope); Trial Tr. Vol. I (DE 161) at 86, 95-96 (waiver); see, e.g., Trial Tr. Vol. II (DE 162) at 118-142 (testimony regarding conversations between defendant and deceased).

Defendant suggests that admission of the November 2013 letter was improper because it was not identified in discovery and not properly referenced in plaintiff's pretrial disclosures. Defendant, however, has not demonstrated prejudice resulting from the lack of identification in discovery in this case or improper reference in plaintiff's pretrial disclosures. Although misidentified, the document was filed on March 7, 2018, by plaintiff in response to court order. (See DE 107). In light of all the circumstances and evidence in the case, given that the November 2013 letter was not essential to plaintiff's prima facie case, and given that it opened the door unexpectedly to substantial testimony by defendant, lack of prior identification and proper disclosure of the exhibit did not affect defendant's substantial rights.

Accordingly, new trial on this basis is not warranted.

    b.  Lay Witness Testimony on Health and Mental Status

Defendant argues the court erred in failing to allow further testimony by lay witnesses as to the health and mental status of Ralph Falls, Jr., particularly during the time the November 2013 letter was signed. The extent of lay witness testimony as to health and mental status, however, was subject of court's deliberate consideration at trial, and the court allowed substantial testimony by lay witnesses as to their observations and perception of health and mental status of Ralph Falls, Jr. Balancing competing considerations of relevance and prejudice, the court excluded testimony that strayed too far towards opinions on medical issues that would be unduly prejudicial if not explained as part of a comprehensive medical history of Ralph Falls, Jr., which was beyond the scope of the instant trial where plaintiff did not introduce any medical records as part of its own case.

For example, at a motion hearing on this issue before trial commenced, the court previewed its reasoning as follows:

I think that it would be very difficult for the defendant to successfully introduce evidence that one of these lay witnesses observed behavior that he could describe as manic or bipolar or something like that. I mean, that would be a lay witness testifying to a specific disorder. And I'd be hard-pressed to see how defendant could get that in. Now, Defendant could offer, if it's the relevant time period, and it's relevant and otherwise meets the not-more-prejudicial-than-probative balancing, what a lay witness observed, I think that that could come in. But as far as characterizing it as a specific disorder, I predict that that would be difficult for you.

(Trial Tr. Vol. I (DE 161) at 6-7). At trial, the court allowed defendant to testify that during a fishing trip, in August 2013, his father was "very cranked up and agitated," "[j]ust all over the place," and "had a hernia surgery scheduled." (Trial Tr. Vol. II (DE 162) at 126). When he received an email from his father demanding payment in September 2013, according to defendant: "It did make me have concerns with regard to when I had seen him and been fishing with him earlier . . . that he had been agitated and anxious, but excited to [sic], like: How is my father now messing these numbers up?" (Id. at 130). Defendant testified as follows about visiting his father in the hospital in October, 2013:

[H]e had had some substantial complications post hernia surgery. . . . He had fallen at his house; it was my understanding. I was not present when he fell, but I was told that he fell not once but twice and hit his head on the first floor bathroom and had had some complications. And then that Monday morning when they rushed him by ambulance he was unable to get out of bed.
Q. And when you saw your father at Duke, what condition was he in?
A. He was in rough shape. It was heartbreaking. He was laid up in bed. He could open his eyes but he wasn't -- I mean, he was very -- he was limited is, I guess, the nice way, I mean, that you'd say about your dad. You don't want to say: My dad was limited and his health was in jeopardy.
Q. Were you able to carry on conversations with him?
A. No.

(Id. at 130-131). Defendant testified he saw his father again at beginning of November and then at a "convalescence center" around Thanksgiving. (Id. at 132). Defendant then testified that his father "got moved back to Duke," but, upon objection from plaintiff, the court cut defendant off after

having said "He had had some tremendous - - " (Id.). Similarly, as to his father's condition in the first or second week of December, defendant testified that "[i]t was poor," with the court cutting defendant off upon objection thereafter. (Id. at 133). When asked "Were you able to carry on conversations with your father at that time?" over plaintiff's objection, the court reasoned: "I'll allow him to testify as to that but not give any opinions as to medical condition of his father that might be medically oriented." (Id.). Defendant testified as to a conversation with his father around Christmas day, where he stated: "My father was very agitated. He was all over the place . . . I wanted to calm the situation down. I didn't need somebody in his state blowing themselves up. And his health was my only concern." (Id. at 136).

While defendant argues he should have been allowed to introduce further testimony on health and mental status of Ralph Falls, Jr., he did not proffer what such testimony would be, nor is it apparent what such testimony could be, given the limitations due to the fact that no medical or expert evidence was introduced at trial. In light of the substantial testimony allowed by the court on health and mental status, limited according to balancing considerations of relevance and prejudice to plaintiff, defendant has not demonstrated a miscarriage of justice in the court's limiting of lay testimony on this subject.

Accordingly, new trial on this basis is not warranted, considered both separately and in conjunction with defendant's prior basis for new trial.

c. Check Register

Defendant argues that the court improperly admitted plaintiff's Exhibit 4, a check register, in violation of Federal Rule of Evidence 802. The court determined the admissibility of the check register under the business records exception to the hearsay rule, after considering arguments of

defendant.  (See Trial Tr. Vol. I (DE 161) at 119-121; Fed. R. Evid. 803(6)).  Defendant's post-trial motion provides no basis for overturning this determination in view of the evidence at trial.  In addition, defendant has not demonstrated denial of a substantial right through admission of the check register.  Accordingly, new trial on this basis is not warranted, considered both separately and in conjunction with defendant's other asserted grounds for new trial.

        d.       Testimony Regarding Robark LLC and GST Trusts

Defendant argues that the court improperly admitted testimony by Nancy Ledford ("Ledford") and John Bode ("Bode") regarding Robark LLC and GST Trusts, where the subject of such testimony was not disclosed in pretrial order and where the testimony was inadmissible character evidence.  The court addresses admission of testimony by Ledford and Bode in turn.

        i.       Ledford

In pretrial order, plaintiff previewed the scope of Ledford's testimony as follows:

> Facts regarding the checks, loan and Falls Jr. assistance with Falls III home purchase. Falls III's refusal to provide promissory note or second mortgage to secure loan. Wrote the $90,000 gift check and the $200,000 loan check and handled 'gift letters' with Wells Fargo at Mr. Falls' direction.  Interest check deposited by Falls III.

(Pretrial Order (DE 140) at 14-15).  In the course of questioning about plaintiff's Exhibit 7, described as a $7,000 check for "interest" paid by defendant, plaintiff's counsel asked Ledford: "[W]as it unusual for money to be deposited into Mr. Falls' account without your knowledge like this $7,000?" (Trial Tr. Vol. II (DE 162) at 13).  Then, counsel asked the question: "How about the GST Trust[s]?" whereupon defendant's counsel objected and a description of anticipated testimony was heard at sidebar. (Id.).  The proffer included the point that defendant "was depositing money into one account, which wasn't his own account; he was also withdrawing and reinserting money" in the same month in the GST Trust accounts.  (Id. at 14).  The court allowed Ledford to proceed with

testimony, including that the GST Trust accounts "had been totally wiped out," that defendant "was not the least bit concerned," and he said it was a bank error and the funds were put back in the account that day. (Id. at 16-17).

Contrary to defendant's argument, this testimony by Ledford was not outside the scope of identified testimony nor inadmissible character evidence. Rather, supporting reasonable inferences in favor of plaintiff, the testimony was relevant to the issues of loan formation, breach, and the $7,000 payment on the loan in December 2013. Ledford's testimony provided important context for the loan, in that it showed defendant's varied roles with respect to accounts and finances of Ralph Falls, Jr., and that the loan was not just an isolated transfer between father and son. Defendant's unilateral transfers involving the GST Trust accounts were similar in time and manner to his unilateral deposit of the $7,000 check. Moreover, evidence that defendant "totally wiped out" the GST Trust accounts, even for a day, without being "the least bit concerned," serves to rebut defendant's contention at trial that he gave the $7,000 check to placate his father and ensure no stress to a fragile health condition. (See Trial Tr. Vol. II (DE 162) at 136).

Where Ledford's testimony was relevant for purposes other than solely showing character for truthfulness, it was not improperly admitted character evidence. In this respect, defendant's reliance on Rules of Evidence 404(a) and 608(b) is misplaced. Under Rule 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Under Rule 608(b) "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack . . . the witness's character for truthfulness." Neither rule, however, limits introduction of evidence of specific instances of prior conduct for other purposes, including those noted in Rule 404(b).

In particular, evidence of prior conduct may be admitted if the evidence is also proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); <u>see</u> <u>Smith Grading & Paving</u>, 760 F.2d at 530 (allowing extrinsic evidence attacking a witness's credibility, where the evidence also was relevant to intent and knowledge of a charged bid rigging conspiracy). Indeed, the Fourth Circuit has recognized that evidence of a witness's prior conduct is particularly relevant where it is used to make "credibility attacks based upon motive or bias." <u>Quinn v. Haynes</u>, 234 F.3d 837, 854 (4th Cir. 2000). "Since bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of <u>the underlying relationships, circumstances, and influences</u> operating on the witness to determine whether a modification of testimony reasonably could be expected as a probable human reaction." <u>Id.</u> (quotations omitted; emphasis added).

In addition, prior conduct of a witness also may be admissible, under Rule 404(b), as probative of an "essential claim or element," such as bearing on knowledge or intent of a defendant or claimant. <u>Westfield Ins. Co. v. Harris</u>, 134 F.3d 608, 614 (4th Cir. 1998); <u>United States v. Rawle</u>, 845 F.2d 1244, 1247 (4th Cir. 1988). Likewise, prior acts may be admissible to "establish[] a modus operandi," or a pattern of specific conduct, provided the prior acts are "similar in nature to" the act at issue at trial. <u>United States v. Siegel</u>, 536 F.3d 306, 318 (4th Cir. 2008). "[T]he more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes" for purposes of Rule 404(b). <u>Westfield</u>, 134 F.3d at 614; <u>United States v. Queen</u>, 132 F.3d 991, 996 (4th Cir.1997).

In this case, Ledford's testimony did not concern merely a random prior instance by defendant that might tend to attack defendant's character for truthfulness. Rather, the testimony

regarding the GST Trust account activity in December 2013 was probative because it was linked in multiple respects to the transaction at issue, both in terms of the relationship of defendant to his father, the context of financial dealings between them, and the specific actions in December 2013, at the time of demands for payment by Ralph Falls, Jr. Accordingly, admission of Ledford's testimony about the GST Trusts is not a proper basis for new trial.

        ii.     Bode

Testimony by Bode is subject to a similar analysis. In pretrial order, plaintiff previewed that his testimony would cover "[f]acts regarding the loan and Falls III refusal to provide promissory note or second mortgage." (Pretrial Order (DE 140) at 15). At trial, Bode testified about the history of his relationship with Ralph Falls, Jr., the establishment of Robark LLC and related trust (hereinafter the "Robark trust") to benefit the children of Ralph Falls, Jr., and installation of Bode in place of defendant as trustee of Robark trust in 2014. He testified about the reason for this change as follows:

> I believe that Mr. Falls was disappointed in the behavior of his son. There was a matter of some loan, a mortgage loan, and some other things like that. And I hadn't seen Ralph personally in a number of years. He came over to my office and asked me if I would please help him. I said I would.

(Trial Tr. Vol. II (DE 162) at 68). Bode then testified about the following activity of the Robark trust with defendant as trustee, which Bode discovered upon becoming trustee and reviewing books and records of the trust:

> The activities of the trust raised a couple of issues. One of the issues that was particularly bothersome to me. . . . I went back through all of the data, and I became aware that Mr. Falls, III had taken $60,000 out of the Robark Properties account. And . . . the management agreement did not permit that[.]

(Id. at 69).  Bode suggested that defendant had executed more recently a promissory note for repayment of that sum.  (Id.).

The first part of the cited testimony, regarding reasons for removal of defendant as trustee, is probative to the loan because it shows conduct by Ralph Falls, Jr., that is consistent with his demands for repayment and intention to hold his son to their agreement despite the gift letters.  The second part of the cited testimony, regarding defendant's $60,000 payment from the Robark trust, is probative to the loan for reasons similar to Ledford testimony about the GST Trusts.  In particular, it provides context for the loan, showing defendant's varied formal roles with respect to accounts and finances of Ralph Falls, Jr., and that the loan was not just an isolated transfer between father and son. At the same time, in light of the recently recognized $60,000 repayment obligation, it tends to show a motive on the part of defendant for later insisting that the $200,000 transfer from Ralph Falls, Jr., was a gift instead of a loan, in a unilateral effort to balance various financial obligations with his father's estate.  Finally, taking together defendant's activities in the GST Trusts, the Robark trust, and the loan, the jury reasonably could infer a pattern with respect to financial arrangements between defendant and his father, where the private nature of the arrangements limited documentation and outside scrutiny.

In sum, Bode's testimony was admissible as probative to issues raised at trial and was not merely improper character evidence.  Defendant argues, nonetheless, that it was improper for plaintiff to urge the jury at closing argument to "disbelieve" defendant because of his activities with the GST Trusts and the Robark trust.  (Mem. (DE 165) at 16).  Defendant, however, did not object to plaintiff's suggestions to the jury in closing argument, and defendant did not request a limiting instruction.  Moreover, the referenced testimony was probative to more than just defendant's

"character for truthfulness," Fed. R. Evid. 608(b), as explained herein above, and plaintiff did not impermissibly invite the jury to judge defendant only in that limited respect.

In any event, even if improperly admitted and subject to argument at closing, introduction of objected-to testimony of Ledford and Bode did not result in a miscarriage of justice, where plaintiff presented substantial additional testimony of the loan agreement and breach, including defendant's unequivocal deposition testimony. Accordingly, defendant has not demonstrated entitlement to a new trial on this basis, considered both separately and in conjunction with defendant's other asserted grounds for new trial.

e.    Burden of Proof

Defendant argues that the court erred in instructing the jury that defendant had the burden of proof on modification or cancellation. In support of this argument, defendant contends that he "did not assert the defense of modification or cancellation of the agreement; rather Defendant claimed that the $200,000 transfer was a gift at the time the ultimate agreement was reached between the parties." (Mem. (DE 165) at 18). The court's jury instructions, however, permitted the jury to find that the $200,000 transfer was a gift either as part an original agreement of the parties, or as part of a modification of that original agreement.

In particular, in instructing the jury as to the first element of plaintiff's breach of contract claim, the court noted, with respect to this element on which plaintiff had the burden of proof, that:

> defendant contends and plaintiff denies that no loan contract formed between the parties because the $200,000 delivered by Ralph L. Falls, Jr. to Ralph L. Falls, III was a gift. The essential elements of such a gift in this context are 1) donative intent, that is, intent to give up all ownership and control of a sum of money immediately, and 2) actual delivery of the sum of money to defendant. Now, you will recall that earlier before we broke for lunch I defined intent or knowledge. So you can refer back to that. Actual delivery occurs when there is a direct transfer to another of ownership and control of something. Furthermore, intent to make a gift and delivery

under law must be present simultaneously. For example, with regard to instruments such as checks, the gift by someone of a check is but the promise of a gift. It does not amount to a completed gift until the check is cashed or deposited by the recipient. To determine whether requisite intent exists to make a gift requires consideration of all the facts regarding the purported gift. Intent may be inferred from the relation of the parties. Thus, <u>on question 1 on the verdict form, on which plaintiff has the burden of proof by a preponderance of the evidence</u>, if you find by a preponderance of the evidence that Ralph Falls, Jr. agreed that Ralph Falls, Jr. would loan Ralph Falls, III, defendant herein, $200,000 upon defendant's promise to place a second mortgage on the home that defendant purchased in Summit, New Jersey or to provide a promissory note in favor of Ralph L. Falls, Jr., then it would be your duty to answer this question "Yes" in favor of plaintiff. <u>If, on the other hand, you fail so to find, it would be your duty to answer this question "No" in favor of defendant.</u>

(Trial Tr., Vol. III (DE 163) at 118-119) (emphasis added). Defendant's counsel, at closing argument, raised contentions in line with this instruction on the first element of plaintiff's breach of contract claim, stating: "this is really a very simple case. It's about whether or not in July 2013, Mr. Falls and his sone Ralph agreed, finally agreed, that this was going to be a loan or a gift." (<u>Id.</u> at 67-68). Defendant's counsel claimed: "The very fact that he would have crossed out, 'To be secured by a second mortgage' and 'To repay loan' from the two checks reflects that he understood it was no longer a loan. The same day he signed the Gift Letters." (<u>Id.</u> at 70). Defendant's counsel reiterated this contention again upon conclusion:

> [J]ust set aside what the witnesses said, and just look at the documents and decide for yourself: Was there a gift? Was the <u>gift made when Ralph received the money on July 31 and signed the Gift Letter and crossed out the memo lines on the checks</u>? And did <u>his father confirm it when he signed it, signed the Gift Letter the very next day</u>? I think that's enough evidence to conclude that <u>it certainly wasn't a loan, that it was just a gift</u>. And I do hope you will return a fair verdict reflecting that.

(<u>Id.</u> at 85) (emphasis added). In this manner, defendant urged the jury to find that the parties reached an agreement that the $200,000 transfer was a gift, and that in this respect plaintiff failed to meet its burden of proof that it was a loan.

The fact that the court then gave the jury a second opportunity to find that the parties cancelled or modified the original agreement, such that it became later a gift, does not amount to a miscarriage of justice depriving defendant a substantial right. Indeed, defendant's own deposition testimony suggested such a theory of defense, where he admitted his father provided him a "loan," (Def's Dep. at 12, 28; see Trial Tr. Vol. II (DE 162) at 79-81), leaving for the jury a reasonable inference that the loan was cancelled or modified around the time of Ralph L. Falls, Jr.'s execution of a gift letter for Wells Fargo or at some later time. (Trial Tr. Vol. II (DE 162) at 123). For such a defense theory, the court properly instructed the jury that the burden of proof rested with defendant to show a cancellation or modification of the loan. See, e.g., N.C. Pattern Jury Inst. - Civil 502.50 (Contracts – Issue of Breach – Recision).

In sum, defendant has not demonstrated entitlement to a new trial on this basis, considered both separately and in conjunction with defendant's other asserted grounds for new trial.

    f.    Consideration

Defendant argues that the court erred in failing to instruct the jury that love and affection is sufficient consideration to modify or cancel a loan agreement. The court previously addressed this issue in order entered March 30, 2018, and the court adheres to its prior analysis.

Defendant cites Exum v. Lynch, 188 N.C. 392 (1924) and Edwards v. Batts, 245 N.C. 693 (1957), for the proposition that love and affection of a parent for a child constitutes sufficient consideration to support a "contract," as distinguished from a "promise." Neither case, however, states such a simple proposition. Exum states, for example: "[W]hile 'love and affection' is generally held to be a sufficient consideration to support a conveyance at least as between the parties, it may not be a sufficient consideration to support a promise." Exum, 125 S.E. at 18

20

(emphasis added).   In the same opinion, <u>Exum</u> describes sufficient consideration to support a "promise," in terms used to describe consideration for all contracts:

> [T]he term "consideration," <u>in the sense it is used in legal parlance, as affecting the enforceability of contracts</u>, consists either in some right, interest, gain, advantage, benefit, or profit accruing to one party, usually <u>the promisor</u>, or some forbearance, detriment, prejudice, inconvenience, disadvantage loss, or responsibility, act or service given, suffered, or undertaken by <u>the promisee</u>.  Consideration means not so much that one party, or some one else, is profiting as that the other party abandons some present legal right, or limits his lawful freedom of action in the future as an inducement for the making of <u>the promise</u>.

<u>Exum</u>, 125 S.E. at 17 (emphasis added).   <u>Edwards</u> states: "A <u>deed of gift</u>, duly signed and delivered, is an executed contract. If recorded within the time prescribed by G.S. s 47-26, it is valid, as between the parties and their heirs, without consideration, good or valuable.     <u>Edwards</u>,245 N.C. at 698 (emphasis added).

At bottom, neither <u>Exum</u> nor <u>Edwards</u>, nor any other case referenced by the court or the parties, holds that love and affection constitutes valid consideration for cancellation or modification of a completed loan agreement.  Accordingly, finding no basis in the law for doing so, the court properly declined to provide the instruction requested by defendant.

In any event, failure to provide the requested instruction does not constitute a miscarriage of justice in this case because, as defendant asserts in his brief, he never contended before the jury that a completed loan agreement was cancelled or modified, but rather that a gift instead of a loan was formed in the first place.  Defendant urged this theory upon closing argument, and the court's instructions allowed the jury to reach a verdict on the basis of such a theory.  Thus, the court's instructions on a defense of cancellation or modification of a loan, even if incorrectly reflecting the law regarding consideration for such a defense, did not affect defendant's substantial rights.

In sum, defendant has not demonstrated entitlement to a new trial on this basis, considered both separately and in conjunction with defendant's other asserted grounds for new trial. Defendant's motion for new trial thus is denied.

C.    Interest

In accordance with the court's oral order dated March 29, 2018, the parties submitted briefing on the issue of prejudgment and postjudgment interest.  Plaintiff contends that interest on plaintiff's damages award of $193,000 should run from December 9, 2013, or, in the alternative, from November 7, 2014, the date the lawsuit was filed.  Defendant contends plaintiff is entitled to no interest.

North Carolina law provides for interest in an action for breach of contract as follows:

> In an action for breach of contract, except an action on a penal bond, the amount awarded on the contract bears interest from the date of breach. The fact finder in an action for breach of contract shall distinguish the principal from the interest in the award, and the judgment shall provide that the principal amount bears interest until the judgment is satisfied. If the parties have agreed in the contract that the contract rate shall apply after judgment, then interest on an award in a contract action shall be at the contract rate after judgment; otherwise it shall be at the legal rate. On awards in actions on contracts pursuant to which credit was extended for personal, family, household, or agricultural purposes, however, interest shall be at the lower of the legal rate or the contract rate. . . .

N.C. Gen. Stat. § 24-5(a).  In addition, North Carolina law provides, in pertinent part, that "the legal rate of interest shall be eight percent (8%) per annum for such time as interest may accrue, and no more."  N.C. Gen. Stat. § 24-1.

The first issue presented by section 24-5(a) is the "date of breach."  In this case, the jury did not make any findings as to the date of breach.  Nevertheless, in such circumstances, the date of breach and amount of interest is "a question of law properly within the province of the trial judge."

Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 431 (1986). Plaintiff suggests that a breach took place in this case on December 9, 2013, the date for performance demanded in a November 17, 2013, demand letter from Ralph Falls, Jr. to defendant. In light of defendant's payment on the loan later in December 2013, however, which the jury used as a basis for reducing damages from $200,000 to $193,000, it is also reasonable to infer that the date of breach came after December 2013. Defendant most clearly repudiated the loan upon defendant's answer filed January 23, 2015, "denying that the payment [from his father] was a loan and denying all allegations of liability." (Stipulations (DE 149) at 1; see Answer (DE 9) at ¶¶ 12, 24, 30-36). Because this constitutes the most clear and unequivocal event of breach based on the record, the court adopts January 23, 2015, as the date of breach in this case.

The next issue presented by section 24-5(a) is the rate of interest. Where the issue of rate of interest is not submitted to the jury, interest is determined as a matter of law. See McInnis, 318 N.C. at 431; see, e.g., Metromont Materials Corp. v. R.B.R. & S.T., 120 N.C. App. 616, 618 (1995). Here, where there was no "contract rate" specified in the loan agreement, the legal rate, 8% per annum, applies. See N.C. Gen. Stat. § 24-1.

Defendant argues that the "contract rate" in this instance is 0% because the jury determined the loan did not bear any interest. Defendant suggests the jury must have found a 0% interest rate applied to the loan, because the jury credited the $7,000 check paid by defendant to Ralph Falls, Jr., in December 2013, towards a reduction in the amount of the loan, rather than treating it as an interest payment. (See Verdict (DE 152) at 2; Plaintiff's Ex. No. 7).

This argument is flawed because it assumes the jury made findings about the rate of interest, where it did not make any such findings. The jury was not asked to make any findings about the rate

of interest, and the parties did not advance any contentions about the rate of interest at trial. In this context, the fact that the jury credited the $7,000 check against the principal amount of the loan does not translate to a finding that defendant and Ralph Falls, Jr., agreed that the loan would carry a 0% interest rate. Where the loan agreement found by the jury in question one of the verdict form did not specify payment terms of interest or principal, the $7,000 check reasonably could be considered a payment or principal or interest or some combination of both. In this instance, the evidence permitted a finding that it was a payment towards the principal balance of the loan. Defendant's mere unilateral act of payment does not alter the jury's finding of the terms of the loan agreement in response to question one of the verdict form.

In sum, the court will enter an amended judgment in accordance herewith specifying that the judgment accrues interest at a rate of 8% per annum starting on January 23, 2015, until such date as the judgment is paid.

D.     Setoff defense

As discussed at pretrial conference, the court held in abeyance consideration of a setoff defense asserted by defendant until after conclusion of the trial, upon such further order of the court as may be warranted.

In considering what defendant now asserts to be a "setoff defense" for "[r]ent payable" and "[c]osts of maintenance and repair," (Defendant's post-trial brief (DE 157) at 5-6), the court notes as a preliminary matter that such a defense was not well pleaded. Indeed, the answer filed January 23, 2015, did not mention rent payable or costs of maintenance and repair. It included a "Ninth Further Defense" for "Setoff" stating that, to the extent defendant is liable: "Defendant is entitled to a setoff for any amounts owed by Plaintiff to Defendant including but not limited to amounts

alleged in Defendant's Counterclaim." (Answer (DE 9) at 6). Defendant's counterclaim included, first, a claim for breach of fiduciary duty, asserting that Ralph Falls, Jr., had failed "to distribute the trust property of the Falls QPRT to Falls III, including, without limitation, failing to execute and deliver a deed conveying a title to the [Morehead City] Property to Falls III." (Answer (DE 9) at 9). Second, defendant asserted a counterclaim for specific performance, seeking to have Falls Jr. execute a deed conveying title to the Morehead City house. The specific performance counterclaim was mooted after Falls Jr. died and defendant conveyed the title to himself. (See Order Denying Summary Judgment (DE 43), at 16 n.7). Defendant thus expressly sought a conveyance in the answer, not "rent" or "costs."

Nevertheless, on March 24, 2016, defendant raised in response to plaintiff's motion for summary judgment a counterclaim for which "rent and other amounts due" was payable as damages, under a theory of "breach of fiduciary duty," as distinct from a "Creditor's Claim for rent and other amounts due" then pending in the "Estate Action," Case No. 15-E-1997, in Wake County Superior Court, which became Case No. 5:16-CV-98-FL, upon removal to this court by defendant on March 3, 2016. (Response (DE 39) at 24-25). Defendant also asserted a "setoff defense that cannot be resolved absent interpretation of trust documents at issue in a separate action currently being litigated between these same parties," referencing again the Estate Action. (Id. at 3 n.3).

In its order denying summary judgment, the court suggested that defendant had constructively amended his answer to preserve a setoff defense for which "rent and other amounts due" was payable as damages, through his "references to the lease and his creditor's claim in state court for rent due under the lease, as well as his deposition statements substantiating the basis for the setoff." (Order (DE 43) at 17-18). The court has cause to reconsider now, however, whether

defendant's assertions and conduct, post-answer, amounted to a constructive amendment of the answer. While a pleading may in some circumstances be constructively amended through litigation conduct, upon "express or implied consent of the parties," Fed. R. Civ. P. 15(c), plaintiff in this case did not give consent to try a setoff defense, but rather asserted in reply to summary judgment that plaintiff had "improperly asserted a setoff" in the instant action. (Reply (DE 42) at 7). In sum, a "setoff defense" for "[r]ent payable" and "[c]osts of maintenance and repair." (Defendant's post-trial brief (DE 157) at 5-6), was not pleaded properly. Therefore defendant's instant request for relief in the instant action based thereon must be denied.

In the alternative, even if such a setoff defense was pleaded properly, subsequent procedural history confirms that such a setoff defense no longer presents a viable issue or claim for resolution in the instant case. In its summary judgment order, the court described defendant's "setoff theory" in conjunction with defendant's counterclaim for breach of fiduciary duty and "creditor's claim in state court for rent due under the lease," and the court directed defendant to show cause why his counterclaim for breach of fiduciary duty should not be dismissed or held in abeyance pending resolution of the Estate Action. (Order (DE 43) at 18).

In response to the show cause order, defendant asserted that his "breach of lease" claim would be dismissed from the Estate Action and that he had asserted the same "breach of lease" claim in a new action then filed in Case No. 5:16-CV-740 (hereinafter also referenced as the "Trust Action"). (Response (DE 44) at 2). Defendant asserted that the "counterclaim for breach of fiduciary duty in the instant action is a separate claim from Falls III's claim for breach of the lease," and that such claim should be "consolidated with Case No. 5:16-CV-740 to be heard in conjunction with the breach of lease claim in that action in order to promote judicial economy and avoid the

potential for inconsistent results." (Id. at 3). Defendant asserted that "the amount of those damages will be equal to rents that Falls III would otherwise have been entitled to receive." (Id. at 2-3).

The referenced Trust Action was commenced by Ralph Falls III and his children on August 12, 2016, against Goldman Sachs Trust Company, N.A., among other defendants, asserting claims including the following pertinent here:

1)  "Breach of Lease," asserting: "In addition to rent due and owing under the Lease, the Estate is liable to Falls III for damages caused to the [Morehead City] Property as a result of the failure by the Decedent and the Estate to properly maintain the Property during the term of the Lease." (Case No. 5:16-CV-740-FL, Complaint (DE 1) ¶ 110).

2)  "Enforcement of Lease," asserting: "pursuant to the Lease Provision in the Fifth Amendment [to Revocable Trust], the Trustee [Goldman Sachs Trust Company, N.A.] is required to continue the Lease in full force and effect." (Id. ¶ 112).

Having asserted claims for which rents due were payable as damages, defendant did not then suggest any basis by which a setoff defense seeking the same rents due should remain in the instant case. Indeed, such an approach would run counter to defendant's own reasoning in seeking consolidation "to promote judicial economy and avoid potential for inconsistent results." (Id. at 3). Moreover, defendant reiterated these grounds for consolidation in his motion filed November 7, 2016, where he emphasized a common core of operative facts in determining "rent that Falls Jr. owed to Falls III." (Def's Motion (DE 48) at 3). Defendant confirmed the limited issues which then would remain for trial in the instant case:

[C]onsolidation will streamline the issues for trial in the Loan Action to those related to the alleged loan from Falls Jr. to Falls III, while allowing all of the interrelated issues raised by Falls III's [breach of fiduciary duty] Counterclaim, his breach of lease claim, and the additional claims asserted in the Estate Action to be addressed together in that action.

(Def's Mem. (DE 49) at 9) (emphasis added). By seeking consolidation of "all of the interrelated issues" pertaining to the lease, defendant left no room for maintenance of a setoff defense on the same basis in the instant action.

On December 20, 2016, the court granted defendant's motion to sever and consolidate related claims. In that order, the court described the severance and consolidation as follows:

> Defendant in the first case captioned above [the instant case No. 5:14-CV-777-FL] seeks the court to sever Ralph L. Falls III's first counterclaim for breach of fiduciary duty (see No. 5:14-CV-777-FL, DE 9 ¶¶ 17-21), and consolidate that claim with plaintiff's [sic] other claims pending in the second case captioned above [No. 5:16-CV-740-FL]. As a result, the sole claim proceeding next month to trial in case No. 5:14-CV-777-FL would be the claim by plaintiff Goldman Sachs Trust Company, N.A., for breach of contract (see No. 5:14-CV-777-FL, DE 1 ¶¶ 30-36).

(Order (DE 55) at 2). Such order was without qualification or reservation, and was well-supported by defendant's own stated desire to try "all of the interrelated issues" pertaining to the lease in the Trust Action, and with the "sole claim proceeding . . . to trial" in the instant case being one for breach of contract. (Order (DE 55) at 2).

At that time, in the Trust Action (5:16-CV-740-FL), Goldman Sachs Trust Company, N.A., as a defendant therein, had filed a motion to dismiss as untimely the claim in that action for "Breach of Lease" brought by Ralph Falls III, as a plaintiff therein. Regarding that motion, the court noted in the instant case: "The court expresses in this ruling no opinion on the still-pending motion to dismiss Ralph L. Falls III's claim for breach of lease." (Order (DE 55) at 2).

At first pretrial conference in the instant case, in January 2017, the court asked defendant about the defense of setoff, as follows:

> THE COURT: . . . . It's certainly – as I have granted the motion to sever, it would seem that your defense of setoff completely went out of this case and went to the other one.

28

MR. HEYL: Yes, Your Honor.

THE COURT: Okay. And plaintiff is going to clarify in the context of working with the defendant its position on specific performance in the context of the verdict sheet, the new verdict sheet that's coming back to this Court.

MR. ARMBRUSTER: Yes, Your Honor.

MR. HEYL: And I think that could impact some of our defenses.

. . . .

THE COURT: . . . are you prejudiced by the court giving you until January 10th to conclude that process?

MR. HEYL: I don't think so, Your Honor, so long as we're not being asked to, you know, concede any defenses.

THE COURT: Okay.

(See First Pretrial Conf., Jan. 3, 2017 at 14:23:57; see also Second Pretrial Conf. Tr. (DE 113) at 20 (quoting rough notes)). While suggestion was made at second pretrial conference that the reference to not "conced[ing] any defenses" could have preserved a setoff defense, upon close examination, such reference plainly was made with respect to the "specific performance" component of the verdict sheet, (id.), and not to any setoff defense, which was without qualification no longer a part of the instant action. On May 1, 2017, the court in the Trust Action granted Goldman Sachs' motion to dismiss the "Breach of Lease" claim as barred by the statute of limitations. (Order 5:16-CV-740-FL (DE 102) at 8-12).

The end result of this procedural history is that what defendant now asserts to be a "setoff defense" for "[r]ent payable" and "[c]osts of maintenance and repair," (Def's post-trial brief (DE 157) at 5-6), is not a defense, issue, or claim, that remains for adjudication in the instant action. The relief sought through this "setoff defense" rather is the same as, or overlaps with, the relief sought

through one or more claims asserted in the Trust Action. The precise nature of the issues and claims remaining for adjudication in the Trust Action is beyond the scope of this order. The court notes for purposes here only that one or more claims remain in the Trust Action for which "rent due" and other costs may provide a measure of damages. Accordingly, the court must deny defendant's request in post-trial briefing for relief in the instant action in the form of "[r]ent payable" and "[c]osts of maintenance and repair." (Id.).

Defendant argues, nonetheless, that his "entitlement to offset amounts due him from Plaintiff is a well-established right." (Id. at 4). He cites Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995), for the proposition that the "right of setoff" allows parties "to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." That case, however, and the statement it makes, is inapposite here because the asserted setoff defense here does not merely arise in a situation where the parties have "mutual debts" and "B owes A," with B being the Estate of Ralph Falls, Jr. and A being Ralph Falls III. Id. Here, plaintiff has already obtained a judgment against Ralph Falls III, but Ralph Falls III has not obtained a judgment against the Estate of Ralph Falls, Jr. The question of whether Ralph Falls III can or will obtain a judgment against the Estate of Ralph Falls, Jr., in any amount, is an issue that remains for adjudication in the Trust Action. Thus, the parties do not have "mutual debts against each other," properly resolved through setoff. Id.

Defendant also cites North Carolina case law for the proposition that "[i]t is settled under North Carolina law that a defendant when sued may set up any claim against the plaintiff assigned to him before the action is begun as a set-off or a counterclaim." Commerce Mfg. Co. v. Blue Jeans Corp., 146 F. Supp. 15, 18 (E.D.N.C. 1956) (citing Barber v. Edwards, 218 N.C. 731, 12 S.E.2d 234,

234-235 (1940)) (emphasis added). Likewise, defendant cites North Carolina statutes for the proposition that "any <u>claim</u> pending in the action" at the time of the decedent's death "will be deemed to have been presented from the time of the substitution" of a personal representative for decedent. N.C. Gen. Stat. § 28A-19-1 (emphasis added). But such propositions merely beg the question that is addressed by the court in the instant order: Where defendant does not have a "claim" or a "counterclaim" remaining in the instant action, is there any basis to now assert a "setoff defense" for adjudication in the instant action? Based on the analysis above, the answer to this question is "No," and the cases cited do not address the unique circumstances presented here.

In sum, the court denies defendant's request for relief in the form of a "setoff defense" in the instant action for "[r]ent payable" and "[c]osts of maintenance and repair." (Def's post-trial brief (DE 157) at 5-6). All issues properly presented in this case now having been decided, the court directs entry of an amended judgment including an award of interest as specified herein.

## CONCLUSION

Based on the foregoing, defendant's motion for judgment notwithstanding the verdict and for new trial (DE 164) is DENIED. Defendant's request for relief in the form of a setoff defense is denied, and the court DIRECTS the clerk to enter an amended judgment including an award of interest as follows:

> That this action came before The Honorable Louise W. Flanagan, United States District Judge, for consideration of defendant's and plaintiff's oral motions for directed verdict. Subsequent to the court's ruling as to these motions, the claims in this action were tried by a jury with The Honorable Louise W. Flanagan presiding, and the jury rendered a verdict favorable to plaintiff. Subsequent to trial, the court denied defendant's motion for judgment notwithstanding the verdict and for new trial. The court denied defendant's request for relief in the form of a setoff defense, and the court determined that the judgment shall accrue interest at a rate of 8% per annum starting on January 23, 2015, until such date as the judgment is paid.

IT IS ORDERED, ADJUDGED AND DECREED that Ralph L. Falls, Jr. and defendant DID reach an agreement that Ralph L. Falls, Jr. would loan defendant $200,000.00 upon defendant's promise either to place a second mortgage on the home that defendant purchased in Summit, New Jersey or to provide a promissory note in favor of Ralph L. Falls, Jr.

IT IS ORDERED, ADJUDGED AND DECREED that defendant DID breach the agreement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that after entering into the agreement, Ralph L. Falls, Jr. and defendant DID NOT cancel or modify the terms of the agreement.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff is entitled to recover $193,000.00 from defendant and plaintiff is entitled to recover interest on that amount accruing at a rate of 8% per annum, calculated starting on January 23, 2015, until such date as the judgment is paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff WAS NOT damaged by defendant's misrepresentation that he would place a second mortgage in favor of Ralph L. Falls, Jr. on the home that defendant purchased in Summit, New Jersey.

SO ORDERED, this the 16th day of July, 2018.


_____
LOUISE W. FLANAGAN
United States District Judge